STATE of Minnesota, Respondent,

v.

Roger Merlin FADER, Appellant.

No. C9–83–478.

Supreme Court of Minnesota.

Nov. 2, 1984.

Kenneth Meshbesher, Minneapolis, for appellant.

Michael O. Lynch, Boyde Beccue, Willmar, for respondent.

YETKA, Justice.

Defendant was found guilty by a district court jury of a charge of criminal sexual conduct in the first degree, Minn.Stat.

§ 609.342(a) (1982) (penetration of complainant under 13 by person more than 36 months older). The trial court departed dispositionally from the Sentencing Guidelines, sentencing defendant to a stayed term of 43 months in prison with probation conditioned on defendant's spending 30 days in jail, participating in a treatment program, and making restitution to the victim in the amount of $10,000. On this appeal from judgment of conviction and from the order denying his motion for a new trial, defendant argues (1) that his conviction should be reversed outright because the evidence of his guilt was legally insufficient, (2) that he should be given a new trial because (a) the trial court erred in determining that the victim was competent to testify, (b) the trial court erred in admitting other-crime evidence, (c) the prosecutor committed misconduct both before and during the trial, and (d) the trial court gave an inadequate response to a question by the jury during its deliberations, or (3) that, at least, the restitution order should be vacated. We affirm defendant's conviction, but remand for reconsideration of the restitution order.

1. The complaint charged that on July 18, 1982, defendant, who is 68 years old, took a 5-year-old girl into a trailer behind his house and digitally penetrated her vagina. The evidence clearly was sufficient to support the jury's determination that defendant, at least, had sexual contact with the victim. The issue of whether the evidence was sufficient to support a determination that defendant sexually penetrated her is more difficult. The victim did not testify as to whether penetration occurred, only that defendant put his hands inside her pants and touched her. The investigating officer testified, however, that she told him that defendant put his finger *in* her. The state argues that the statement was admissible as an excited utterance under Rule 803(2) of the Minnesota Rules of Evidence. This is questionable because (a) there was no evidence that the victim was excited; in fact, the evidence was to the contrary, (b) a significant amount of time

passed before the victim made the statement, and (c) the statement was made in response to a question.

■■■ The officer also testified that defendant himself admitted that he penetrated the victim. This non-hearsay admission, under Rule 801(d)(2) of the Minnesota Rules of Evidence, was substantive evidence that defendant penetrated the victim. The victim's statement to the police officer was admissible for the non-hearsay purpose of corroborating the victim's in-court testimony and the police officer's testimony concerning defendant's confession. Under Minnesota law, "[a] confession of the defendant shall not be sufficient to warrant his conviction without evidence that the offense charged has been committed * *." Minn.Stat. § 634.03 (1982). In other words, a confession by itself will not support a conviction, but must be corroborated. For a full discussion of the corroboration requirement, *see, McCormick's Handbook of the Law of Evidence* § 158 (E. Cleary 2d ed. 1972). In this case, the victim's testimony and the officer's testimony concerning her statement to him provided sufficient corroboration of defendant's confession that he penetrated the victim.

2. Defendant makes a number of arguments in support of his contention that he did not receive a fair trial and that he, therefore, should be given a new one.

■■■ (a) First, he argues that the trial court erred in determining that the victim was competent to testify. In Minnesota, "[a] witness is a person whose declaration under oath is received as evidence for any purpose * * *." Minn.Stat. § 595.01 (1982). Children under the age of 10 "who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly, are not competent witnesses." Minn.Stat. § 595.-02(6) (1982). This rule of incompetency "does not apply to a child under ten years of age [in a criminal prosecution for sexual abuse] who is able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined." Id. (recently amended, see Act of April 26, 1984, ch. 588, § 4 1984 Minn.Laws 1226, 1227). Recent cases of this court interpreting and applying this statute include *State v. Cermak,* 350 N.W.2d 328 (Minn.1984), and *State v. Amos,* 347 N.W.2d 498 (Minn.1984). In this case, the trial court conducted a preliminary examination to determine whether the victim understood the need to tell the truth and whether she was capable of narrating the facts. She seemed to know the difference between telling the truth and lying and seemed to be an intelligent child capable of narrating adequately the facts. It would have been preferable for the trial court not to use leading questions in examining her, but the trial court did not abuse its discretion in ruling that she was competent to testify.

(b) Defendant next contends that the trial court erred in allowing the state to prove other criminal conduct by defendant in rebuttal of defendant's character evidence. The other-crime evidence related to similar sexual abuse by defendant of a 7-year-old neighbor friend of the victim on two occasions in the trailer in the summer of 1982. The trial court refused to let the prosecutor use this evidence as *Spreigl* evidence in its case in chief because it felt that the allegations were too vague as to the date and that the evidence otherwise was not sufficiently clear and convincing. On rebuttal, however, the court permitted the prosecutor to call the victim of the other crimes, stating that defendant had placed his character in issue during his testimony and that the state could use the other-crime evidence to rebut this.

■■■ Rule 405(a) of the Minnesota Rules of Evidence allows inquiry by the prosecutor into relevant specific instances of misconduct on cross-examination of a defense character witness. Defense counsel, hoping to avoid such inquiry, decided against calling the character witnesses during the defense's case in chief. Defendant himself testified that he had no prior criminal convictions, that he was a Christian, and that he had had a long and happy marriage. Even if that testimony opened

the general issue of defendant's character in the same way as calling character witnesses, it would not have justified admitting extrinsic evidence of specific instances of prior misconduct.

■ Rule 405(b) of the Minnesota Rules of Evidence allows proof of specific instances of misconduct by a defendant when his character is "an essential element of a charge, claim, or defense." Character is "in issue" within the meaning of this rule only when character traits are of significance as an *element* of the crime, claim or defense. That was not the case here. *See* 2 D. Louisell & C. Mueller, *Federal Evidence* § 150 (1978).

■ There are cases admitting evidence of this sort simply to contradict the testimony of the defendant or a defense witness. *See, e.g., State v. Waddell*, 308 N.W.2d 303 (Minn.1981) (trial court properly allowed prosecutor to inquire into prior criminal conduct of defendant which was opened up on direct examination of defense witness where purpose of prosecutor's inquiry was to establish that witness, contrary to her testimony on direct, was afraid of defendant and that her fear may have motivated her to falsely discredit the complainant's testimony). If defendant had testified on direct that he had never touched any other children, then the evidence clearly would have been admissible to impeach or contradict that testimony. Defendant, however, did not go that far. Rather than decide whether his testimony by itself justified the admission of the other-crime evidence on rebuttal, we hold that the evidence was independently admissible in any event as *Spreigl* evidence pursuant to Rule 404(b). The trial court had discretion not to admit the evidence as *Spreigl* evidence, and it chose not to do so when asked to do so. However, as an objective matter, the court could have done so. The vagueness as to the precise date of the act was not a serious defect. *State v. Becker*, 351 N.W.2d 923 (Minn.1984); *State v. Waukazo*, 269 N.W.2d 373 (Minn.1978). The

conduct in question occurred in the same general time period and in the same neighborhood and was similar to the conduct underlying the charge against defendant. Further, the testimony of the victim of the other criminal conduct easily constituted clear and convincing evidence that defendant committed the other crime, the victim's delay in reporting the matter not being a significant fact under the circumstances, particularly given her age.[1]

■ (c) Defendant's next contention is that the prosecutor committed misconduct both before and during trial. Defendant's claim of misconduct occurring before trial is basically that the prosecutor and others coached or directed the victims as to what to say. There is no evidence that the prosecutor or others did anything but familiarize the victims with the type of questions they would be asked and with court procedures and tell them to be truthful.

Defendant's claim of misconduct occurring during the trial consists of a broad attack on the prosecutor's opening statement, the prosecutor's bolstering the police officer by eliciting that he was the "Officer of the Year," the prosecutor's use of a leading question in cross-examining defendant, and the prosecutor's closing statement. Defense counsel objected once during the prosecutor's opening statement when the prosecutor started arguing his case rather than just stating what his evidence would show, and the trial court sustained the objection. Defense counsel argued his case in his opening statement.

■ Defense counsel objected when the prosecutor elicited evidence that the police officer received the "Officer of the Year" award, but used the fact of the award against the state in his closing argument. Specifically, defense counsel used the title "Policeman of the Year" as a rhetorical refrain every time he cited what he argued was a mistake by the officer— *e.g.*, the officer's failure to take a written statement from defendant and the officer's

---

1. For reasons discussed in part 2(a) of this opinion, we also hold that the trial court did not err

in determining the competency of the victim of the other criminal conduct to testify.

use of deception in questioning defendant. It is standard practice for prosecutors to ask police officers preliminary background questions to establish that they are trained police officers. We are less convinced about the propriety of eliciting evidence about the awards an officer has received, particularly where the officer is not called to give expert opinion testimony, but is called merely to testify as to his investigation. The general rule is that the party calling a witness may not support or bolster the witness's testimony by evidence of the witness's credibility and good character until the witness has been impeached in those respects by the opponent. Minn.R. Evid. 608(a). One justification for the rule is the interest of everyone in avoiding the needless consumption of time which a contrary rule would entail. Minn.R.Evid. 608(a) Advisory Committee Note. Further, such testimony might artificially increase the probative strength of the witness's testimony in the eyes of the jury. *Homan v. United States,* 279 F.2d 767, 773 (8th Cir. 1960), *cert. denied,* 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960). However, defendant was not prejudiced by the evidence in this case since defense counsel presumably would have attacked the officer's conduct in any event and particularly since defense counsel was able to use the evidence against the state in closing argument.

■ Defense counsel objected to a leading statement used by the prosecutor in asking a question of defendant on cross-examination, but did not state a ground for the objection. Even if the objection should have been sustained, the failure to do so clearly was not prejudicial.

■ Defense counsel objected only once during the prosecutor's closing argument—when the prosecutor argued that only defendant had any real self-interest in the case—and the objection was appropriately overruled, the matter being one that is traditionally the subject of argument by counsel.

■ (d) Defendant also contends that the trial court's response to the second of two questions by the jury during its deliberations had the effect of directing a guilty verdict. This question was: "Does first degree [criminal sexual conduct] supersede second degree, or can we find him guilty on one and innocent of one?" The trial court responded as follows:

I'll repeat for you the instruction which I previously gave on lesser included offenses. As you know, the complaint in this action charges the Defendant with the offense of criminal sexual conduct in the first degree, and I have previously defined that for you and its elements. The law provides that upon the prosecution of a person for a crime, if the person is not guilty of that crime, he may nonetheless be guilty of a lesser crime. The lesser crime in this case is criminal sexual conduct in the second degree, and you are instructed that the presumption of innocence and the requirement of proof beyond a reasonable doubt apply as well to that lesser charge. If you find beyond a reasonable doubt that the Defendant has committed a crime, but you have reasonable doubt which crime he has committed, he is guilty of the lesser crime only.

Defendant contends that it was error for the trial court to fail to state specifically, as it had in its original instructions, that if the jury had a reasonable doubt as to both first and second-degree criminal sexual conduct, it should acquit defendant. We believe that the court's response to the question was adequate and did not mislead the jury into thinking that it had to find defendant guilty of something. Further, since the jury found defendant guilty of the more serious of the two offenses, it is clear that even if defendant's interpretation of the court's response is correct, the response did not prejudice defendant.

3. Defendant's final contention is that the trial court abused its discretion in ordering defendant to make restitution in the amount of $10,000 because there was no evidence that the victim or her family sustained any economic loss and insufficient evidence of defendant's ability to pay the amount in question.

If the aim of restitution is rehabilitation of the defendant, the amount should be set according to the defendant's ability to pay and need not even appropriately compensate the victim. Note, *Restitution in the Criminal Process: Procedures for Fixing the Offender's Liability*, 93 Yale L.J. 505, 508–09 (1984). However, if the aim is to compensate the victim, then the amount should be based on the victim's injury. *Id.* at 509. A sexual assault victim's loss is difficult to quantify. Note, *Victim Restitution in the Criminal Process: A Procedural Analysis*, 97 Harv.L. Rev. 931, 933 (1984). It would include the cost of necessary treatment and related expenses, but beyond that, one gets into the realm of speculation.

The court may condition probation on restitution "when practicable." [2] Minn. Stat. § 609.135, subd. 1 (1982). Minnesota Sentencing Guidelines and Commentary, III.A.2. (1983) urges judges to make expanded use of restitution as a condition of probation, especially for persons with short criminal history scores convicted of property crimes, adding that the use of restitution may be appropriate in other cases also.

In our opinion, the word "restitution" connotes restoring or compensating the victim for his loss. If the legislature intended the term to be used more loosely, as a form of punitive damages, it should have used some other word or made its particular use of the word clearer.

The record indicates that defendant, although with some difficulty, is able to pay the $10,000, but the record does not provide a factual basis for the restitution award. Under the circumstances, we remand the case to the trial court for reconsideration, at which time the parties may present evidence bearing on the issue of economic loss to the victim and her family. We add that any decision by the trial court to award restitution does not by itself bar the victim and her family from independently seeking damages from defendant in a separate civil action, although any restitution awarded in this proceeding would operate as a setoff against any award obtained in such an action.

Remanded.

---

**2.** 1984 Minn.Laws, ch. 610, § 1 changed the law so that the sentencing court now may order a defendant to make restitution even if the court executes the prison sentence.