**STATE of Minnesota, Respondent,**

v.

**Lyle Edward KEEHN, Appellant.**

No. C0–96–76.

Court of Appeals of Minnesota.

Sept. 10, 1996.

Review Denied Dec. 17, 1996.

Hubert H. Humphrey III, Attorney General, Robert A. Stanich, Assistant Attorney General, St. Paul, Michael J. Thompson, Meeker County Attorney, Litchfield, for Respondent.

John M. Stuart, State Public Defender, Scott G. Swanson, Assistant State Public Defender, Minneapolis, for Appellant.

Considered and decided by KALITOWSKI, P.J., and LANSING and WILLIS, JJ.

## OPINION

LANSING, Judge.

After entry of Lyle Keehn's criminal convictions, the district court ordered restitution for the victim and the Department of Human Services. On Keehn's appeal from the restitution order, we hold that the Department of Human Services is a "victim" for purposes of restitution, but remand for further proceedings because the evidence supporting the order is not sufficiently specific to meet the statutory requirements.

## FACTS

Lyle Keehn pleaded guilty to fifth degree assault and engaging in a pattern of harassing conduct. The conduct underlying his convictions involved physical abuse and extensive harassment of his now estranged wife, C.K. After a severe assault took place in front of J.K., their five-year-old son, C.K. moved from their family home to a different city. She obtained an order for protection which Lyle Keehn repeatedly violated. Keehn also violated the order's restriction against possession of weapons. In separate instances while the order was in effect, police confiscated weapons that included semi-automatics, pump rifles, and shotguns.

C.K. took various measures to ensure her safety and, as a result, incurred a number of expenses. She requested, and the trial court granted, restitution to compensate for expenses associated with hiring a private investigator and for lost wages when she could not continue her employment. Keehn has not appealed either of these restitution items but appeals restitution for relocation expenses identified as miscellaneous expenditures and various deposits. He also appeals ordered reimbursement to the medical assistance program for evaluation and counseling for J.K.

In an affidavit requesting restitution, C.K. described the relocation expenses as miscellaneous cash receipts and deposits:

| | |
|---|---|
| Misc. Cash receipts from setting up new household | $541.97 |
| Deposit on Electricity Hookup | $117.00 |
| Deposit on Telephone hookup | $ 50.00 |
| Deposit on Insurance of new trailer | $184.13 |
| Deposit of propane, trailer court rent | $245.50 |
| Deposit of Culligan, soft water hookup | $ 62.96 |

C.K. supplemented the list with a handwritten note explaining that she "had to buy everything from scratch from salt and pepper to bar soap to dish soap to toilet paper to toilet cleaner to canned soup & meat & potatoes etc."

In a separate affidavit requesting restitution, the Minnesota Department of Human Services sought reimbursement for payments made under the Medical Assistance Program on behalf of J.K. The department requested and was awarded $864.82 for psychological evaluations and counseling provided to the child for a time period following the assault which caused C.K. to move. The department, in a letter attached to its affidavit, described the expenses as "psychiatric expenses which we believe are directly related to the family situation caused by Lyle Keehn."

## ISSUES

I. Are "deposits" items of loss that qualify for restitution under Minn.Stat. § 611A.04 (1994)?

II. Does a claim for "miscellaneous" cash expenses satisfy the requirements of Minn. Stat. § 611A.04 if it does not list specific items?

III. Is the Minnesota Department of Human Services a "victim" for purposes of restitution under Minn.Stat. § 611A.04?

## ANALYSIS

■ The district court has authority to order restitution to compensate the "loss sustained by the victim as a result of the offense." Minn.Stat. § 611A.045, subd. 1 (1994). If there is a dispute over the proper amount or type of restitution, the dispute is resolved by a preponderance of the evidence. Minn.Stat. § 611A.045, subd. 3 (1994). The burden of substantiating the amount and type of restitution is on the prosecution. *Id.*

### I

■ Minnesota Statutes section 611A.04, subdivision 1(a) (1994) authorizes restitution for "out-of-pocket losses resulting from the crime." Out-of-pocket losses may include items such as "medical and therapy costs, replacement of wages and services, and funeral expenses." *Id.* While some latitude is given in the statute for what *types* of losses may be compensated through restitution, the plain language provides that restitution is appropriate only if there is, in fact, a loss.

■ The district court's restitution order, tracking the language of C.K.'s affidavit, lists her relocation expenses as deposits rather than payments or expenses. But neither the affidavit nor the order indicates whether the deposits may be refunded. The term "deposit" has multiple meanings. Most common is the definition supporting the notion that a deposit is refundable. A security deposit on a new apartment, for example, is normally returned at the end of the tenancy. Refundable deposits like the security deposit are not losses for which restitution is appropriate. *See id.* (requiring requests for restitution to describe the items or elements of loss).

But a deposit can also be a "partial or initial payment of a cost or debt." *The American Heritage Dictionary of the English Language* 502 (3d ed. 1992). In other words, "deposit" does not necessarily imply "refund." We cannot determine on this record whether the expenses labeled "deposits"

were down payments or refundable collateral. Before awarding restitution, the district court must establish that the victim has, in fact, incurred a loss. Consequently, we remand for further findings on whether these deposits were losses as required by Minn. Stat. § 611A.04, subd. 1(a).

## II

■ A victim seeking restitution is required under Minnesota law to describe with reasonable specificity the nature and amount of his or her losses. "Information submitted relating to restitution *must* describe the items or elements of loss, itemize the total dollar amounts of restitution claimed, and specify the reasons justifying these amounts * * * ." Minn.Stat. § 611A.04, subd. 1(a) (emphasis added). While the district court has wide discretion in granting restitution, the record must provide a factual basis for an award. *State v. Hanninen,* 533 N.W.2d 660, 662 (Minn.App.1995), *review denied* (Minn. Sept. 28, 1995).

■ The district court's restitution order awarded C.K. $541.97 for "[m]iscellaneous [c]ash receipts from setting up [a] new household." C.K.'s affidavit in which she stated she "had to buy everything from scratch from salt and pepper to bar soap" apparently served as the basis for the miscellaneous cash award. The record contains no receipts or any other reference to receipts.

While C.K.'s affidavit offers a general impression of the losses she incurred setting up a new household, it falls short of the statutory demand for an itemized description of the losses and their value. There is nothing in the record that specifies the miscellaneous items needed or the amounts spent as a result of C.K.'s relocation. It is impossible to determine how she or the district court reached the precise figure of $541.97.

The record amply supports, and Keehn does not dispute, the necessity of C.K.'s relocation. Although it would be unreasonable to expect a receipt, or even the exact price, for every purchase, it is not unreasonable to request some amount of detail in the description and general costs of items purchased.

Indeed, the statute requires such description and itemization.

Because the information available in the record does not include any itemized listing or identification of expenditures that make up the $541.97, we remand to the district court for further findings. C.K. should be given the opportunity to provide a more specific list of items purchased and their approximate costs. We note that we are not requiring receipts or proof of exact purchase price, but rather a list, as required by statute, with reasonable specificity describing the items or elements of loss and the dollar amount of those losses.

## III

■ Whether the state, when it has reimbursed victims of crimes through the Department of Human Services, qualifies as a "victim" itself for purposes of restitution has not previously been addressed by Minnesota appellate courts. The construction of a statute is a question of law and fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

The statute defines victim as a natural person or a corporation that incurs loss as a result of a crime. Minn.Stat. § 611A.01(b) (1994). Restitution is inappropriate unless the recipient of restitution is the victim of a crime. *See State v. Dillon,* 529 N.W.2d 387, 395 (Minn.App.) (reversing restitution award to police agency's Drug Task Force because the agency was neither a natural person nor a corporation for purposes of statutory restitution), *remanded on other grounds,* 532 N.W.2d 558 (Minn.1995); *State v. Harwell,* 515 N.W.2d 105, 110 (Minn.App.1994) (reversing restitution award to the Missing Children's Fund because the fund was not a victim of defendant's crime), *review denied* (Minn. June 15, 1994).

■ When the Department of Human Services provided psychological services and counseling to J.K., it incurred expenses directly on behalf of a crime victim. The department incurred these expenses because C.K. did not have the financial resources to acquire the needed services at her own ex-

pense. A differently situated victim may have had insurance that would have covered these expenses. Here, the state was acting, through the Department of Human Services, as the victim's insurer. Insurers have been recognized as appropriate recipients of restitution. *State v. Jola,* 409 N.W.2d 17, 19 (Minn.App.1987). We hold that when the state incurs expenses on behalf of crime victims which under other circumstances would be paid for by the victims themselves, the state is acting as an insurer of those victims and is itself a victim for purposes of restitution. Other jurisdictions have reached similar conclusions. *See, e.g., Roe v. State,* 112 Nev. 733, 917 P.2d 959, 960 (1996) (affirming restitution order in favor of county social services and state welfare departments since agencies were analogous "to a guardian acting on behalf of the children"); *State v. Jeffries,* 42 Wash.App. 142, 709 P.2d 819, 820 (1985) (affirming restitution to the Department of Labor and Industries which acted like an insurer when it incurred expenses on behalf of an assault victim disabled by the offense), *review denied* (Wash. Feb. 21, 1986).

At the restitution hearing, Keehn objected to the counseling fees by asserting that the department could not be a victim for purposes of restitution. Since we hold the department may receive restitution as an "insurer," Keehn should, on remand, be given the opportunity to challenge the amount of restitution ordered to the department. *See* Minn.Stat. § 611A.045, subd. 3 (allocating evidentiary burdens). The prosecution, in turn, retains the burden of demonstrating the amount of loss sustained by the victim as a result of the offense. *Id.*

### DECISION

Because the district court erred in awarding restitution for potentially refundable expenses and for miscellaneous costs not sufficiently described by the victim, we reverse the restitution order and remand for further findings on the nature and amounts of expenses. We affirm the district court's decision that the Minnesota Department of Human Services is an appropriate recipient of restitution and remand to offer Keehn an opportunity to raise objections, if any, to the amount of the award sustained as a result of the offenses.

**Affirmed in part, reversed in part, and remanded.**